**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-03109

JENNIFER BLOCK, and
GARY BLOCK,

      Plaintiffs,

v.

CITY OF LONGMONT, and
AIME'S LOVE LLC;

      Defendants.

---

### COMPLAINT AND JURY DEMAND

---

    Plaintiffs, Jennifer Block and Gary Block, by and through their attorney, Zachary Warren of HIGHLANDS LAW FIRM, hereby bring this Complaint against the City of Longmont ("Longmont") and Aime's Love LLC ("Aime's Love" and, together with Longmont, the "Defendants"), and allege the following:

### I. INTRODUCTION

    1.    The Plaintiffs are disabled veterans of the United States Armed Forces who rely on Service Animals to assist with activities of daily living. State and federal laws protect the rights of individuals with disabilities to utilize Service Animals in places of public accommodation. Despite these long-standing state and federal protections, the Plaintiffs were denied service at Aime's Love on March 8, 2017, because they were accompanied by a Service Animal in training. In the face of open hostility and public humiliation, the Plaintiffs respectfully suggested to the owners of Aime's

Love that they familiarize themselves with the laws regarding Service Animals and peaceably left the premises—a gesture of goodwill and an opportunity for Aime's Love to modify its discriminatory policies regarding Service Animals. Ten days later, on March 18, 2017, the Plaintiffs again visited Aime's Love with a different specially-trained Service Animal only to be met with open hostility, the very same discriminatory policies, and yet another denial of service.

2.      Deeply frustrated with the repeated discriminatory actions taken by Aime's Love, the Plaintiffs requested the owners of Aime's Love to contact the Longmont Police Department, confident that the responding officers would approach the situation with decency and professionalism. Unfortunately, things went from bad to worse once officers arrived on the scene. Not only did the responding officers ratify the unlawful discrimination leveled against the Plaintiffs by the owners of Aime's Love, the officers also condescended, demeaned, and openly mocked the Plaintiffs—leaving the Plaintiffs shocked, humiliated, and without any meaningful recourse. Having already endorsed private discrimination against the Plaintiffs and furthered the damage through their own independent discriminatory conduct, the officers then commanded the Plaintiffs to vacate the premises solely because they were accompanied by a Service Animal.

3.      To make matters even worse, the responding officers were actively engaged in a training exercise throughout their interaction with the Plaintiffs. As part of the Field Training and Evaluation Program ("FTO") program, senior officers are charged with training new officers regarding the official policies and practices of the Longmont Police Department, and modeling the application of these policies and practices while interacting with individuals in the community. In this instance, the senior officers conducted themselves in a manner that is both unlawful and demeaning—all direct evidence of Longmont's failure to adequately train and supervise officers in the Longmont Police Department regarding interactions with individuals with disabilities.

## II.  JURISDICTION AND VENUE

4.      This action arises under certain federal laws, including the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq*., and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 701, *et seq*., over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and the Colorado Anti-Discrimination Act (the "CADA"), Parts 6 and 8, Title 24, Article 34, Colorado Revised Statutes, over which this Court may exercise jurisdiction pursuant to its authority under 28 U.S.C. § 1367(a).

5.      Venue is proper within the District of Colorado pursuant to 28 U.S.C. § 1391(b) because all of the events giving rise to the claims in this matter occurred within the District of Colorado.

## III.  PARTIES

6.      At all times relevant to this action, plaintiffs Gary Block and Jennifer Block were adult residents of the State of Colorado and citizens of the United States. Plaintiffs are married under the laws of the State of Colorado and therefore have a familial association with one another. Plaintiffs are qualified individuals with disabilities for the purposes of the ADA, Section 504, the CADA, and related statutes and regulations. Mr. Block utilizes two animals in connection with his disabilities—Loki and Rajah. At all times relevant to this action, Loki was a miniature Australian Shepherd and a specially-trained Service Animal, and Rajah was a Great Dane and a Service Animal in training.

7.      Aime's Love is a limited liability company organized under the laws of the State of Colorado and located at 331 Main Street, Longmont, Colorado 80501.

8.      Longmont is a home rule municipality under Article XX, § 6 of the Colorado Constitution. The Longmont Public Safety Department and the Longmont Police Department are

departments within Longmont. At all times relevant to this matter, officers and personnel of the Longmont Public Safety Department and the Longmont Police Department were acting as agents of Longmont under color of state law.

## IV.  <u>FACTUAL ALLEGATIONS</u>

9.      On or about March 8, 2017, the Plaintiffs entered Aime's Love to purchase baked goods. At the time, the Plaintiffs were accompanied by a Service Animal in training named Rajah, who assists Mr. Block in several ways, including, without limitation, opening doors, picking up items that are out of reach, providing guidance on uneven terrain, and providing pressure and counter-pressure to stabilize Mr. Block while he is ambulating.

10.     Immediately upon entering Aime's Love, the Plaintiffs were confronted by the owners and agents of Aime's Love, who rudely and aggressively demanded that the Plaintiffs vacate the premises solely because they were accompanied by a Service Animal in training.

11.     The Plaintiffs provided credible verbal assurance, on numerous occasions, that Rajah was, in fact, a Service Animal in training and that Rajah was actively performing several important tasks relevant to Mr. Block's disabilities.

12.     The owners and agents of Aime's Love persisted in demanding "proof" regarding Rajah's credentials as a Service Animal in training while shouting at the Plaintiffs in front of other patrons—humiliating the Plaintiffs in a very public manner.

13.     The owners and agents of Aime's Love made clear that they have a policy against allowing Service Animals on the premises and refused to serve the Plaintiffs pursuant to the policy.

14.     The Plaintiffs respectfully encouraged the owners and agents of Aime's Love to learn more about the rights of individuals with disabilities to utilize Service Animals and stated their intention to return at a later date.

15.     Having been denied service altogether, the Plaintiffs peaceably left the premises of Aime's Love.

16.     Were it not for the denial of service and aggressive conduct of the owners and agents of Aime's Love, the Plaintiffs would have purchased baked goods from Aime's Love.

17.     On or about March 18, 2017, the Plaintiffs returned to Aime's Love hoping to purchase baked goods. At the time, the Plaintiffs were accompanied by a Service Animal named Loki, who assists Mr. Block with numerous activities of daily living, including, without limitation, retrieving items that are out of reach, seeking assistance in times of need, and helping to orient Mr. Block to his surroundings by finding familiar landmarks and persons.

18.     Immediately upon entering Aime's Love, the Plaintiffs were again confronted in a harsh and aggressive manner by the owners and agents of Aime's Love, who demanded that the Plaintiffs vacate the premises pursuant to the same policy against Service Animals.

19.     The owners and agents of Aime's Love again demanded "proof" that Loki was a Service Animal while asking numerous questions regarding the private health information of the Plaintiffs in the presence of onlookers.

20.     The Plaintiffs again provided credible verbal assurances that Loki was, in fact, a specially-trained Service Animal, detailing specific tasks Loki performed for Mr. Block and emphasizing that those tasks were directly related to Mr. Block's well-documented disabilities.

21.     The owners and agents of Aime's Love demanded that the Plaintiffs vacate the premises—again, solely based on the presence of a Service Animal—and threatened to call the police unless the Plaintiffs complied with their demands.

22.     Hopeful that law enforcement officers would vindicate their well-established rights, or at least manage the situation with some semblance of professionalism, the Plaintiffs encouraged the owners and agents of Aime's Love to contact the police and subsequently waited for the police to arrive while seated at a table in Aime's Love.

23.     An audio recording of the call for assistance obtained by undersigned counsel captured a conversation between one of the owners and agents of Aime's Love and a dispatcher from the Longmont Public Safety Department, during which the dispatcher assures the owner and agent of Aime's Love that the Plaintiffs are "trespassing"—obviously unaware of the laws protecting the rights of individuals with disabilities to utilize Service Animals and, even worse, actively encouraging the owners and agents of Aime's Love to further its discriminatory conduct.

24.     Four officers of the Longmont Police Department arrived on the scene several minutes later. These officers were engaged in FTO, which paired senior officers with less experienced officers for training purposes.

25.     At the time these officers responded to Aime's Love, there was no policy or procedure in place at the Longmont Police Department to accommodate individuals with disabilities, and specifically individuals with post-traumatic stress disorder or related mental health conditions, who are intimidated and threatened by the presence of numerous officers responding to non-exigent circumstances at close range and in a confined space.

26.     The responding officers subsequently engaged the Plaintiffs in a manner that was dismissive and condescending—asking repeated questions regarding whether Loki was a Service

Animal despite numerous credible verbal assurances and an explanation of the specific functions provided by Loki to Mr. Block—and unlawfully demanding some manner of "proof" regarding Loki's status as a bona fide Service Animal.

27.    Throughout their engagement with officers of Longmont, the Plaintiffs exhibited obvious signs of physical, mental, and emotional distress, all of which was observed by the officers and known by the officers to be both a manifestation of the Plaintiffs' disabilities and related to the conduct of the responding officers towards the Plaintiffs.

28.    Among other harsh, aggressive, and condescending actions, at least one of the responding officers unapologetically mocked Dr. Block's signs of obvious distress by smirking and disingenuously asking: "Should we call an ambulance for her?"

29.    At various times throughout their interaction with officers from Longmont, the Plaintiffs provided assurances that they were qualified individuals for the purposes of the ADA and provided citative reference to statutes and regulations regarding the rights of individuals with disabilities to utilize Service Animals by pulling up readily-available resources on her cellphone.

30.    The officers ignored obvious signs of physical, mental, and emotional distress throughout their interactions with the Plaintiffs and failed to make any effort to investigate the substance of the Plaintiffs' claims or to protect the Plaintiffs' rights.

31.    The officers ultimately instructed the Plaintiffs to leave the premises of Aime's Love because they were accompanied by a Service Animal and then physically escorted the Plaintiffs from the premises.

32.    Longmont made no modifications to its policies, procedures, or actual practices to accommodate the Plaintiffs during this interaction, despite the fact that the responding officers either knew that the Plaintiffs were qualified individuals for the purposes of the ADA, Section 504,

the CADA, and related statutes and regulations, or otherwise regarded the Plaintiffs as disabled under the same statutory provisions and regulations.

33.     Reasonable modifications to Longmont's policies, procedures, and actual practices relative to individuals with disabilities who utilize Service Animals were available at all times relevant to this action, and are easily-implemented, cost-effective, require only minimal training, and would have avoided the damages identified in this Complaint and Jury Demand.

34.     There were no exigent or countervailing concerns that would excuse Longmont from making reasonable modifications to its policies, procedures, and actual practices relative to interacting with the Plaintiffs.

35.     Longmont engaged in the discriminatory practices described herein intentionally or with reckless indifference to the Plaintiff's rights.

36.     Longmont's policies, procedures, or actual practices of discriminating against individuals with disabilities who utilize Service Animals were the moving force behind the responding officers' conduct and the cause of the Plaintiffs' injuries.

## V.  CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**Violations of the Colorado Anti-Discrimination Act**
(Plaintiffs Against Aime's Love)

37.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if set forth fully herein.

38.     Under the CADA, "[i]t is a discriminatory practice and unlawful for a person, directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because of disability . . . the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

or accommodations of a place of public accommodation . . . ." COLO. REV. STAT. § 24-34-601(2)(a).

39.     In applying the CADA, the Court should "apply the same standards and defense that are available under the federal "Americans with Disabilities Act of 1990", 42 U.S.C. § 12101, et seq., and its related amendments and implementing regulations." COLO. REV. STAT. § 24-34-802(4).

40.     The CADA contains specific provisions regarding the rights of individuals with disabilities to utilize fully-trained Service Animals and Service Animals in training while visiting places of public accommodation, COLO. REV. STAT. § 24-34-803, and prohibits certain kinds of discriminatory conduct:

(1) It is unlawful for any person, firm, or corporation or agent of any person, firm, or corporation to:

   a.  Withhold, deny, deprive, or attempt to withhold, deny, or deprive a qualified individual with a disability who is accompanied by a service animal or a trainer of a service animal of any of the rights or privileges secured in section 24-34-803;

   b.  Threaten to interfere with any of the rights of a qualified individual with a disability who is accompanied by a service animal or a trainer of a service animal secured in section 24-34-803;

   c.  Punish or attempt to punish a qualified individual with a disability who is accompanied by a service animal or a trainer of a service animal for exercising or attempting to exercise any right or privilege secured by section 24-34-803; or

   d.  Interfere with, injure, or harm, or cause another dog to interfere with, injure, or harm, a service animal.

COLO. REV. STAT. § 24-34-804(1).

41.     The CADA also contains specific provisions which make it "unlawful for any person to discriminate against any individual or group because such person or group has opposed

any practice made a discriminatory practice based on disability pursuant to part 5, 6, or 8 of this article . . . ." Colo. Rev. Stat. § 24-34-802(1).

42. Successful plaintiffs may recover their attorneys' fees and costs for violations under these provisions of the CADA. Colo. Rev. Stat. §§ 24-34-802(3) ("An award of attorney fees and costs pursuant to section 24-34-505.6(6)(b) applies to claims brought pursuant to this section."); 24-34-804(3)(b) ("In any action commenced pursuant to this subsection (3), a court may award costs and reasonable attorney fees.").

43. The Plaintiffs are both individuals with disabilities.

44. Rajah was a Service Animal in training at all times relevant to this action.

45. Rajah was under Plaintiff Gary Block's care, custody, and control during his interactions with Defendant Aime's Love and its agents on March 8, 2017.

46. Rajah is housebroken, well-trained, well-behaved, and posed no threat to safety, property, or business operations while on the premises of Aime's Love on March 8, 2017.

47. Aime's Love and its agents discriminated against the Plaintiffs on the basis of disability by implementing and enforcing a policy and actual practice of excluding Service Animals and Service Animals in training from the premises and refusing service to patrons who utilize Service Animals and Service Animals in training.

48. Aime's Love and its agents acted intentionally and with reckless disregard for the Plaintiffs' rights under the CADA.

49. Plaintiffs have been and will continue to be harmed by the discriminatory conduct described above.

50. Without the declaratory and injunctive relief requested herein, the Plaintiffs are likely to encounter the same discriminatory policies and actual practices.

51.     Without the declaratory and injunctive relief requested herein, Defendant Aime's Love and its agents will continue to discriminate against the Plaintiffs on the basis of disability in violation of the CADA.

## SECOND CLAIM FOR RELIEF
### Violations of Title III of the Americans with Disabilities Act
(Plaintiffs Against Aime's Love)

52.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if set forth fully herein.

53.     Title III of the ADA provides in pertinent part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodations." 42 U.S.C. § 12182(a).

54.     The Plaintiffs are both individuals with disabilities.

55.     Loki was a Service Animal at all times relevant to this action.

56.     Loki was under Plaintiff Gary Block's care, custody, and control during his interactions with Defendant Aime's Love and its agents on March 18, 2017.

57.     Loki was housebroken, well-trained, well-behaved, and posed no threat to safety, property, or business operations while on the premises of Aime's Love on March 18, 2017.

58.     Aime's Love is a place of public accommodation. *See* 42 U.S.C. § 12181(7)(E) (specifically identifying a "bakery" as a place of public accommodation).

59.     Pursuant to its statutory mandate, the United States Department of Justice ("DOJ") has promulgated regulations implementing Title III of the ADA, codified in Code of Federal Regulations.

60.     The Code of Federal Regulations specifies that "[g]enerally, a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 36.302(c)(1).

61.     The Code of Federal Regulations also states that "[a] public accommodation shall not require documentation, such a proof that the animal has been certified, trained, or licensed as a service animal." 28 C.F.R. § 36.302(c)(6).

62.     In addition to declaratory and injunctive relief, prevailing plaintiffs are entitled to recover their reasonable attorneys' fees and costs. See 42 U.S.C. §§ 12188(a)(2), 12205.

63.     Aime's Love and its agents discriminated against the Plaintiffs on the basis of disability by implementing and enforcing a policy and actual practice of excluding Service Animals from the premises and refusing service to patrons who utilize Service Animals.

64.     Defendant Aime's Love and its agents acted intentionally and with reckless disregard for the Plaintiffs' rights under the ADA and its implementing regulations.

65.     Plaintiffs have been and will continue to be harmed by the discriminatory conduct described above.

66.     Without the declaratory and injunctive relief requested herein, the Plaintiffs are likely to encounter the same discriminatory policies and actual practices.

67.     Without the declaratory and injunctive relief requested herein, Defendant Aime's Love and its agents will continue to discriminate against the Plaintiffs on the basis of disability in violation of the ADA and its implementing regulations.

**THIRD CLAIM FOR RELIEF**
**Violations of Title II of the Americans with Disabilities Act**
(Plaintiffs Against City of Longmont)

68.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if set forth fully herein.

69.     The ADA and its implementing regulations specifically prohibit discrimination in public services on the basis of disability. 42 U.S.C. § 12132 provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

70.     The ADA defines a "public entity" to include any state or local government or any department, agency, special purpose district, or other instrumentality of a State or local government, 42 U.S.C. § 12131(1). As noted above, the Longmont Public Safety Department and Longmont Police Department are departments within Longmont. As a result, Longmont is a "public entity" within the meaning of the ADA.

71.     The Plaintiffs are qualified individuals with disabilities within the meaning of the ADA and each have one or more physical and/or mental impairments that substantially limit one or more major life activities within the meaning of the ADA. 42 U.S.C. § 12102(2)(A).

72.     The Plaintiffs met the essential eligibility requirements for the receipt of services or participation in the programs or activities provided by Longmont at all times relevant to this matter. 42 U.S.C. § 12131(2).

73.     Longmont excluded the Plaintiffs from participation in services, programs, and activities, and have denied them the rights and benefits afforded to other individuals who come into contact with officers of Longmont, solely by reason of their disabilities in violation of the ADA. Moreover, Longmont has violated the ADA by intentionally failing or refusing to provide reasonable accommodations to the Plaintiffs and other persons who utilize Service Animals.

74.     Longmont has willfully disregarded its duties under the ADA and has knowingly allowed unlawful policies and practices to persist related to the provision of services, programs, and activities to individuals with disabilities, and specifically with respect to the use of Service Animals by individuals with disabilities.

75.     Despite the long-standing and clear provisions of the ADA, Longmont continues to enforce policies and practices that discriminate against the Plaintiffs and other persons with disabilities who utilize Service Animals; therefore, an actual controversy exists between the parties entitling Plaintiffs to declaratory relief pursuant to 28 U.S.C. § 2201.

76.     Without the declaratory and injunctive relief requested herein, the Plaintiffs are likely to encounter the same discriminatory policies and actual practices.

77.     Without the declaratory and injunctive relief requested herein, Longmont and its agents will continue to discriminate against the Plaintiffs on the basis of disability in violation of the ADA and its implementing regulations.

78.     As a direct and proximate result of the acts, omissions, and violations alleged above, the Plaintiffs have suffered damages, injuries, pain and suffering, emotional distress, impairment of quality of life, past and future economic losses, including loss of earnings and loss of earning capacity, reasonable and necessary medical and other expenses.

**FOURTH CLAIM FOR RELIEF**
**Violations of Section 504 of the Rehabilitation Act of 1973**
(Plaintiffs Against City of Longmont)

79.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if set forth fully herein.

80.     Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in Section 7(20), shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal Financial assistance . . . .

81.     At all times relevant to this action, the Plaintiffs were qualified individuals with one or more disabilities within the meaning of Section 504.

82.     The Plaintiffs were qualified to participate in the services, programs, activities, and benefits provided to other individuals who come into contact with officers from the City of Longmont within the meaning of Section 504.

83.     At all times relevant to this action, the City of Longmont received and benefitted from direct federal financial assistance.

84.     The City of Longmont denied the Plaintiffs access to programs, benefits, and services provided to other individuals who come into contact with officers from the City of Longmont, and for which the Plaintiffs are qualified to participate, solely on the basis of their disabilities, thereby violating Section 504. Specifically, and without limitation, the City of Longmont discriminated against the Plaintiffs by:

a.  ratifying and furthering the private discrimination leveled against the Plaintiffs by Aime's Love and its agents by enforcing an unlawful policy against the use of Service Animals in a place of public accommodation;

b.  demanding that the Plaintiffs vacate the premises of Aime's Love based solely based on the presence of a Service Animal;

c.  refusing to modify the field training officer policy despite knowing that the Plaintiffs, who both suffer from significant anxiety, post-

> traumatic stress disorder, and other disabilities, were reasonably and obviously intimidated by the imposing physical presence associated with having multiple officers in a confined space;

d.   failing to adequately train officers of Longmont regarding the rights of individuals with disabilities who utilize Service Animals;

e.   failing to adequately supervise officers of Longmont regarding interactions with individuals with disabilities who utilize Service Animals; and

f.   otherwise interacting with the Plaintiffs in a manner that was unnecessarily demeaning, intimidating, and hostile, including openly mocking one of the Plaintiffs as described above, because of the Plaintiffs' disabilities and the presence of a Service Animal.

85.    Despite the clear provisions of Section 504, the City of Longmont persisted in imposing policies and actual practices which discriminate against the Plaintiffs and other persons who utilize Service Animals.

86.    As a direct and proximate result of the acts, omissions, and violations alleged above, the Plaintiffs have suffered damages, injuries, pain and suffering, emotional distress, impairment of quality of life, past and future economic losses, including loss of earnings and loss of earning capacity, reasonable and necessary medical and other expenses.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against the Defendants, and award all relief as allowed by law and equity as appropriate, including, without limitation, the following:

a.   Declaratory and injunctive relief;

b.   Actual economic damages as established at trial;

c.   Compensatory damages, including, without limitation, those for past and future pecuniary and non-pecuniary losses, pain and suffering, emotional

distress, impairment of quality of life, reasonable and necessary medical and other expenses;

d.   Issuance of an Order mandating appropriate equitable relief, including, without limitation, changes to the policies, procedures, and actual practices of the Defendants relative to individuals with disabilities who utilize Service Animals and required training for officers of Longmont;

e.   Pre- and post-judgment interest at the highest lawful rate;

f.   Attorneys' fees and costs associated with this action; and

g.   Such further relief as justice requires.


**PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated this 22nd day of December 2017.


HIGHLANDS LAW FIRM LLC


*/s/ Zachary D. Warren*
Zachary D. Warren

3773 Cherry Creek North Drive
Suite 575
Denver, Colorado 80209
(720) 722-3880
(720) 729-0039 (fax)
zwarren@highlandslawfirm.com

*Counsel for Plaintiff*